(174 App. Div. 88)

## DORATIO v. JACKSON.

(Supreme Court, Appellate Division, Fourth Department.   June 15, 1916.)

1. MASTER AND SERVANT ⊜⟳278(11)—INJURIES TO SERVANT—SAFE APPLIANCES —ELECTRICAL APPLIANCES.

Where servant was injured by premature explosion of dynamite, evidence *held* sufficient to sustain a finding that uncovered battery, with exposed noninsulated lead wires, was not a reasonably safe appliance.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 958; Dec. Dig. ⊜⟳278(11).]

2. MASTER AND SERVANT ⊜⟳278(17)—INJURIES TO SERVANT—METHOD OF WORK—UNSAFE PRACTICE.

Where servant was injured by premature explosion of dynamite, evidence *held* sufficient to sustain a finding that the method of leaving one of the lead wires attached to uncovered battery while making connections with dynamite cap was unsafe practice.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 969; Dec. Dig. ⊜⟳278(17).]

3. MASTER AND SERVANT ⊜⟳265(3)—INJURIES TO SERVANT—NEGLIGENCE OF MASTER—BURDEN OF PROOF—DETAILS OF ACCIDENT.

Where servant's injuries were caused by premature explosion of dynamite, through a lead wire coming in contact with uncovered battery to which the other lead wire was attached, *held*, it was incumbent on plaintiff to prove precisely how the contact was made.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 879, 897; Dec. Dig. ⊜⟳265(3).]

4. APPEAL AND ERROR ⊜⟳174—REVIEW—OBJECTIONS NOT RAISED IN TRIAL COURT.

In an action against a trustee in bankruptcy in his representative capacity for injuries to servant, the failure to allege or prove the order of the bankruptcy court permitting the trustee to carry on the work in question cannot be urged as error on appeal, where such question was not raised by objection in the trial court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1093, 1094, 1121–1132; Dec. Dig. ⊜⟳174.]

5. APPEAL AND ERROR ⊜⟳837(10) — RECORD — EVIDENCE OUTSIDE RECORD — ORDERS IN BANKRUPTCY.

On appeal, the order of the bankruptcy court authorizing the trustee to carry on work of the bankrupt may be considered in support of a verdict for injuries to a servant, where the right to maintain such action was not questioned below.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3267; Dec. Dig. ⊜⟳837(10);   Reference, Cent. Dig. § 225.]

6. APPEAL AND ERROR ⊜⟳1176(5)—DISPOSITION OF CASE ON REVERSAL—REINSTATEMENT OF VERDICT.

On appeal, where an order setting aside the verdict and dismissing the complaint is reversed, the verdict will be reinstated, where the issues

---

⊜⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

were properly submitted, and the record contains no prejudicial error requiring a new trial, and the verdict is not excessive.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4593, 4594; Dec. Dig. ☞1176(5).]

Action by Frank Doratio against Percy Jackson, trustee in bankruptcy. From an order dismissing plaintiff's complaint upon a motion for nonsuit after verdict, plaintiff brings exceptions, which are ordered heard at the Appellate Division in the first instance. Exceptions sustained, nonsuit set aside, verdict reinstated, and judgment entered thereon.

Argued before KRUSE, P. J., and FOOTE, LAMBERT, MERRELL, and DE ANGELIS, JJ.

Alfred W. Gray, of Niagara Falls, for plaintiff.
Clinton B. Gibbs, of Buffalo, for defendant.

KRUSE, P. J. The plaintiff had a verdict for personal injuries sustained while employed in the work of blasting rock, resulting from the premature explosion of a blast. After the verdict had been rendered and the jury discharged, the plaintiff's complaint was dismissed upon defendant's motion for a nonsuit and the direction of a verdict for the defendant, the decision of which was pending when the case was submitted to the jury, and the plaintiff's exceptions ordered heard at the Appellate Division in the first instance.

I think the case was properly submitted to the jury, that the charge was fair, clear, and correct, and that the verdict should be reinstated. I think the jury could find from the evidence: (1) That the battery furnished the plaintiff for doing the work was not a reasonably safe appliance. (2) That the practice of leaving a lead wire connected to the battery while the lead wires were being connected to the blast, as plaintiff claims he was instructed to do by the superintendent, was an unsafe practice. (3) That plaintiff was without fault, and that the risk was not assumed.

The battery consisted of three dry cells, connected by a bare circuit wire, and not inclosed. Two lead wires extended from the battery to the blast. The wires were about 75 feet long. One wire was connected at the battery; the other was unattached. The blast consisted of a third of a stick of dynamite, in which was inserted a cap or exploder, from which ran two strands of wire about four feet long. When the blast was ready to be fired, one strand was connected to the lead wire attached to the battery and the other strand to the unconnected lead wire. After the lead wires and the exploder wires had been connected, the loose end of the unattached lead wire was touched to the bare or uninsulated wire connecting the three cells, completing the circuit, thus firing the blast.

One of the workmen had connected one exploder wire and a lead wire, and the plaintiff had just about finished winding the other lead wire to the other exploder wire, when the explosion occurred. It is contended that the loose end of the unattached lead wire in some way accidentally came in contact with the exposed pole of the battery, thus completing the circuit, or that a ground current was formed from the

loose end of the wire to the battery. Plaintiff's evidence tended to show that the batteries for use in blasting are usually inclosed in a box and the bare and uninsulated parts covered, so as to prevent forming a circuit accidentally, and further that the proper and safe practice would have been to leave both lead wires disconnected at the battery until after they had been connected to the exploder wires.

[1, 2] The defendant contends that the proof is inadequate to show that any ground current would be thus formed. The trial judge seems to have been of the opinion that there was not much to the claim that a ground circuit may have been formed, and so it seems to me. I think, however, that the jury might properly find from the evidence that the uncovered battery, with the bare circuit wire exposed, was not a reasonably safe appliance, and also that leaving one of the lead wires attached, so that, if the loose end of the other lead wire should accidentally come in contact with the exposed circuit wire on the battery, the circuit might be completed and a premature explosion result while the lead wires and the exploder wires were being connected, was a dangerous and unsafe practice. That this practice is unsafe is testified to by plaintiff's experts, and substantially conceded by the defendant's experts, as well as its own superintendent, who denies that he ever told the plaintiff to leave one of the lead wires attached to the battery, as plaintiff testifies.

It seems reasonably certain that the premature explosion was caused in one of two ways: (1) Pulling or jerking the exploder wire, so as to set off the blast by friction, producing an explosion without the aid of the electric current; or (2) the loose end of the unattached lead wire coming in contact with the exposed wire at the battery. The evidence sustains a finding that the explosion was not caused by a disturbance of the exploder, but by the loose end of the unattached lead wire coming in contact with the battery. Just how the contact came about is not so clear.

As has been stated, the plaintiff and one of the workmen had just about finished making the connection of the lead wires and the exploder wires when the explosion occurred. A third man, whose duty it was to close the circuit by bringing the loose end of the lead wire in contact with the battery, testified that he had not made the circuit, but was from 15 to 20 feet from the battery at the time of the explosion, and he is corroborated by the plaintiff and the other workman.

The battery was located in a hole about 3 feet deep. The loose end of the lead wire was placed upon the rock, about 3 or 4 feet from the battery. The wind was blowing from the wire toward the battery. The plaintiff contends that the reasonable inference is that the wind blew the loose wire into the hole, so that it came in contact with the battery.

I am inclined to the opinion that the jury might so find from the evidence. Anyway, it seems clear that the wire did not come in contact with the battery by any voluntary human agency, but that it was accidental. It is possible that the loose wire may have fallen from the rock into the hole in manipulating it, or that some one accidentally touched it or walked against it.

[3] But even so I think actionable negligence may be predicated thereon, for if the battery and the exposed bare wires had been covered, or if both lead wires had been left unattached, the accident would not have happened. I do not think it was incumbent upon the plaintiff to prove precisely how the wire came in contact with the battery. If it is shown that it was caused in one of several ways, any one of which makes the defendant actionably negligent, the defendant may be held liable, although the plaintiff may not be able to point out which it was that caused the contact.

[4, 5] 2. It is further urged, as a ground for sustaining the nonsuit, that the action cannot be maintained against the defendant in his representative capacity, because there is no allegation in the complaint or proof that an order had been obtained from the bankruptcy court permitting the defendant trustee to carry on the work in question, citing in support of that proposition McAuley v. Jackson, 165 App. Div. 846, 151 N. Y. Supp. 120. But it appears by the allegations of the complaint that defendant was appointed trustee in bankruptcy of said company, and thereupon duly qualified as such trustee, and took possession and control of all its property, and that plaintiff was employed by said defendant as such trustee. The answer admits these allegations, and specifically admits that the plaintiff was employed by defendant as such trustee. Furthermore, no such question was specifically raised upon the motion for a nonsuit and direction of a verdict, or at any stage of the trial. If it had been, the proof could have been supplied, because it appears by the certified copy of an order of the federal court that the defendant was in fact authorized to carry on this work. After the trial judge had filed his opinion dismissing the complaint, in which this objection is referred to, the plaintiff asked leave to have considered in evidence this certified copy and made the same request upon the argument of this appeal, which is strenuously objected to by the defendant.

Defendant's counsel contends that the order of the federal court should have been pleaded, and that the general allegations above referred to are insufficient to show a liability against the defendant in his representative capacity. However that may be, I think, in view of the fact that the question was not specifically raised at the trial, the defendant should not be heard now to urge that objection. Adams v. Greenwich Ins. Co., 70 N. Y. 166; Quinlan v. Welch, 141 N. Y. 158, 36 N. E. 12. Furthermore, I think the order may be considered upon this appeal for the purpose of supporting the verdict. Bank of Charleston v. Emeric et al., 4 N. Y. Super. Ct. 718; Rockwell v. Merwin, 45 N. Y. 166; Whitwell v. Wright, 136 App. Div. 246, 250, 120 N. Y. Supp. 1065.

[6] 3. No errors are pointed out prejudicial to the defendant, and I have found none which would warrant a new trial. Neither do I think the verdict is excessive, or should be set aside as against the weight of the evidence. If that is so, the verdict should be reinstated. Herman v. Fitzgibbons Boiler Co., 136 App. Div. 286, 120 N. Y. Supp. 1074. While the case is close, there is nothing to indicate that the verdict is not the result of a thoughtful, careful, and consciencious consideration of the evidence.

As to the amount of the verdict, I think it should not be held excessive. The plaintiff was 26 years old at the time of the accident. He was a strong, healthy man, earning $3.50 a day. He has practically lost both hands, is totally blind in one eye, the sight of the other impaired, the chest and other parts of his body were lacerated and torn, and in short he is a helpless cripple, unable to dress himself or give himself proper care.

Plaintiff's exceptions should be sustained, the nonsuit set aside, the verdict reinstated, and judgment directed to be entered thereupon. All concur.